UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

        Plaintiff,

   -against-                                        1:24-cr-00305 (ALC)

                                                       **OPINION AND ORDER**

JAVON SAMUELS,

        Defendant.

---

**ANDREW L. CARTER JR., United States District Judge:**

        Defendant Javon Samuels ("Defendant") is charged with possession of ammunition after a felony conviction under 18 U.S.C. § 922(g)(1) and 2. Defendant now moves to suppress all evidence obtained as a direct or derivative result of allegedly deficient warrants to search and seize (1) historical cell site data associated with Defendant's cellphone; (2) the contents of Defendant's cellphone; and (3) content and information associated with Defendant's iCloud account. Defendant also moves to dismiss the indictment by invoking his Second Amendment protections. For the reasons set forth below, the Defendants' motions to suppress the challenged evidence and to dismiss the indictment are hereby **DENIED**.

**BACKGROUND**

        On September 11, 2023, at approximately 4:44 a.m. in the vicinity of 357 7th Avenue in Manhattan, New York, an individual wearing a white T-shirt, black baseball cap, black hoodie, black pants with white print inside of both legs, and white sneakers ("Individual-1") discharged a firearm, firing multiple rounds at an unknown target (the "Shooting"). ECF No. 1, Complaint ("Compl.") ¶ 4(a). Law enforcement officials retrieved surveillance video footage from a

building located at or about 360 7th Avenue in Manhattan, New York. *Id.* ¶ 4(b). New York Police Department ("NYPD") officers investigating the Shooting recovered one .380 ACP cartridge casing (the "Ammunition") from the scene of the Shooting. *Id.* ¶ 4(a).

On November 21, 2023, the Government applied for a search warrant for historical location information for a cellphone number associated with the Defendant's cellphone. ECF No. 21, Def. Mem., Ex. 1 at 2–4. The application was supported by an agent affidavit and set forth probable cause that the cellphone location data would provide evidence that Defendant participated in the Shooting. *See id.* at 5–13. The warrant application sought permission to obtain historical cellphone data for the period September 1, 2023 through the date of the order. *Id.* at 12. The agent affidavit provided facts to assert that Individual-1 committed the subject offense based on surveillance footage from the vicinity of the Shooting and that Individual-1 wore the same distinctive pants that Defendant wore in a photograph posted to his Instagram account on October 8, 2022. *Id.* at 8–11. Additionally, the agent affidavit noted that the agent "submitted [the photograph] taken from the Instagram account to a facial recognition database which returned a possible match to [Defendant's] photograph from a prior arrest." *Id.* at 6

To show probable cause that Defendant used the target cellphone, the agent affidavit stated that Defendant had participated in an alternative sentencing program on August 30, 2023[1], twelve days before the Shooting. *Id.* at 11. Defendant communicated with employees of the

---

[1] At Defendant's presentment, the Government noted—and Defendant did not dispute—that at the August 30, 2023 sentencing for Defendant's prior conviction in a state case, Defendant was "given a conditional sentence of probation" and "the judge informed him that if [Defendant] violated his terms of probation, [the judge] could sentence him up to seven years in prison." ECF No. 21, Def. Mem., Ex. 5 at 10:13–18. Counsel for Defendant then noted that Defendant began participating in the alternative sentencing program on "August 30th, and that's when he entered the plea in the state case." *Id.* at 18:4–8. The record indicates that Defendant was on probation at the time of the Shooting, so he would have had a diminished expectation of privacy. *See United States v. Newton*, 369 F.3d 659, 665 (2d Cir. 2004) (noting that probationers "are subject to 'a degree of impingement upon privacy that would not be constitutional if applied to the public at large[]'") (quoting *Griffin v. Wisconsin*, 483 U.S. 868, (1987)). However, because the Court finds no other infirmities with the search and seizure, it does not consider Defendant's reasonable expectation of privacy as a factor in its analysis below.

program by text message on multiple days leading up to and after the Shooting. *Id.* The agent concluded that based on his experience and training in investigating violent offenses, he knew that "individuals carrying out shootings often carry their cell phones during the commission of their crimes, and use the cell phones to locate, purchase, and/or sell illegal firearms and ammunition." *Id.* at 12. That same day, Magistrate Judge Barbara Moses signed the warrant. *Id.* at 13.

On November 22, 2023, before the warrant was served, the Government submitted an amended application for a warrant (the "Cell Site Warrant") exactly like the prior application except that it omitted the statements about the facial recognition match.[2] ECF No. 26, Gov't Opp., Ex. A at 2–14. That same day, Judge Moses signed the Cell Site Warrant. *Id.* at 17.

On March 5, 2024, Magistrate Judge Ona T. Wang signed a Complaint charging Defendant with possession of ammunition after a felony conviction in violation of 18 U.S.C. §§ 922(g)(1) and 2. ECF No. 1, Complaint. That same day, Judge Wang issued an arrest warrant for Defendant based on the Complaint. Gov't Opp at 6.

On March 12, 2024, the Government applied for a search warrant for Defendant's residence and any electronic devices seized during the search of the premises or of the Defendant (the "Cellphone Warrant"). *See* Gov't Opp., Ex. B at 2–19. The application was supported by an agent affidavit that included a probable cause analysis similar to the one used in support of the Cell Site Warrant. *See id.* The agent affidavit in support of the Cellphone Warrant relied on returns from the Cell Site Warrant and also included statements based on the agent's knowledge and experience that concluded that individuals who commit firearm offenses commonly used

---

[2] Defendant cited only the November 21 warrant in his memorandum, but the Government submits that it only relied on the November 22 warrant. *See* Gov't Opp. at 6, n. 4. The Court applies Defendant's arguments as to the deficiencies of the November 21 warrant to the November 22 warrant. The Court also considers the November 22 warrant to be the operative warrant hereinafter.

3

cellphones in furtherance of the criminal activity; that most people in the United States carry a cellphone when not at home; and that individuals often store evidence used in furtherance of their criminal activity in their residences for extended periods of time. *Id.* ¶¶ 15–18, 20–21. That same day, Magistrate Judge James R. Cho signed the Cellphone Warrant. *Id.* at 33–39. On March 19, 2024, the FBI arrested the Defendant and recovered a cellphone. Gov't Opp. at 7.

On March 28, 2024, the Government applied for a search warrant seeking Defendant's iCloud account for the time period September 1, 2023 through the date of the order (the "March iCloud Warrant"). *See* Gov't Opp., Ex. C at 2–19. The supporting probable cause affidavit noted that some of the other individuals involved with the Shooting may have communicated with Defendant. *Id.* ¶ 22(g). The agent stated that based on his training and experience, individuals engaged in the subject offense often communicate over text, email and/or social media and use the Internet in furtherance of procurement of illegal weapons. *Id.* ¶ 23. That same day, Magistrate Judge James L. Cott signed the March iCloud Warrant.

On October 7, 2024, the Government applied for a search warrant seeking Defendant's iCloud account for the time period October 8, 2022 through the date of the order (the "October iCloud Warrant"). *See* Gov't Opp., Ex. D at 2–20. The agent affidavit in support of the application was largely similar to the affidavit supporting the March iCloud Warrant, except that this affidavit contained additional facts falling with the expanded timeframe. *Id.* ¶¶ 27–28. The agent affidavit also noted that the agent witnessed photographs of Defendant wearing what appears to be same outfit as Individual-1 and showing Defendant possessing firearms. *Id.* ¶ 27. That same day, Magistrate Judge Robert W. Lehrburger signed the October iCloud Warrant. *Id.* at 19.

On November 22, 2024, Defendant filed motions to suppress evidence obtained pursuant to the electronic device and digital storage warrants detailed above. ECF Nos. 20–21. On December 13, 2024, the Government filed its opposition. ECF No. 26. On December 20, 2024, Defendant filed his reply. ECF No. 27. On February 6, 2025, the Court held oral argument on Defendant's motion to suppress. *See* 2/6/2025 Minute Entry.

## LEGAL STANDARD

### I.   Fourth Amendment

The Fourth Amendment prohibits "unreasonable searches and seizures" and requires that "no warrants shall issue, but upon probable cause, supported by Oath." U.S. Const. amend. IV; *see also United States v. Falso*, 544 F.3d 110, 117 (2d Cir. 2008). "The Supreme Court has explained that 'probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules.'" *Falso*, 544 F.3d at 117 (quoting *Illinois v. Gates*, 462 U.S. 213, 232 (1983)).

A search executed pursuant to a warrant signed by a magistrate and supported by probable cause is presumptively reasonable. *McColley v. Cty. of Rensselaer*, 740 F.3d 817, 823 (2d Cir. 2014). "The task of the issuing magistrate or judge is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before [them], . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* (quoting *Gates*, 462 U.S. at 238) (alteration, footnote, and quotation marks omitted).

The supporting affidavit must show "first, that a crime was committed, and second, that there is probable cause to believe that evidence of such a crime is located [in the place to be searched]." *United States v. Lustyik*, 57 F. Supp. 3d 213, 224 (S.D.N.Y. 2014). "This standard

5

does not demand 'hard certainties,' but it does require more than a 'hunch,' the latter being insufficient to support even an investigative stop." *United States v. Lauria*, 70 F.4th 106, 128 (2d Cir. 2023) (quoting *Gates*, 462 U.S. at 231) (citation omitted). Rather, "probable cause must be grounded in sufficient facts to establish the sort of 'fair probability' on which 'reasonable and prudent men, not legal technicians'" would rely. *Id.* (citation omitted).

A magistrate judge's determination of probable cause to search is to "be paid great deference by reviewing courts." *Spinelli v. United States*, 393 U.S. 410, 419 (1969). The Court's "task," therefore, "is simply to ensure that the 'totality of the circumstances' afforded the magistrate 'a substantial basis' for making the requisite probable cause determination." *United States v. Clark*, 638 F.3d 89, 93 (2d Cir. 2011) (quoting *Gates*, 462 U.S. at 238); *accord United States v. Boles*, 914 F.3d 95, 102 (2d Cir. 2019).

## II. Second Amendment

The Second Amendment recognizes "an individual right to keep and bear arms for self-defense." *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 16 (2022). "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct" and "[t]he government must . . . justify its regulation [of such conduct] by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 17, 24.

The framework for assessing whether a regulation is "consistent with the Nation's historical tradition of firearm regulation" differs according to the nature of the problem the regulation is meant to solve. *Id.* at 26–29. "For instance, when a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the

6

challenged regulation is inconsistent with the Second Amendment." *Id.* at 26.  However, "unprecedented societal concerns or dramatic technological changes may require a more nuanced approach." *Id.* at 27.

"When confronting such present-day firearm regulations, this historical inquiry that courts must conduct will often involve reasoning by analogy." *Id.* at 28.  "[A]nalogical reasoning requires only that the government identify a well-established and representative historical analogue, not a historical twin." *Id.* at 30.  In other words, "a modern-day regulation" need not be "a dead ringer for historical precursors" to survive constitutional scrutiny.  *Id.*  Instead, the regulations must be "relevantly similar" in light of "at least two metrics: how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 29.

## DISCUSSION

The Court first considers whether the warrants challenged by Plaintiff were deficient such that all evidence sourced from the warrants should be suppressed.  Finding that there is no basis to suppress the warrants and that the warrants were executed in good faith, the Court denies Defendant's suppression motion.  Next, upon a finding that 18 U.S.C. § 922(g)(1) is not unconstitutional—either facially or as applied to Defendant—the Court denies Defendant's motion to dismiss the indictment.

**I.      Suppression Motion**

A search warrant must "establish[ ] a sufficient nexus between the criminal activities alleged" and the place or object to be searched.  *United States v. Singh*, 390 F.3d 168, 182 (2d Cir. 2004); *accord United States v. Chang*, No. 18-CR-0681 (NGG), 2024 WL 1308775, at *11 (E.D.N.Y. Mar. 27, 2024) (analyzing nexus in the cellphone search context).  "A showing of

7

nexus does not require direct evidence and may be based on reasonable inference from the facts presented based on common sense and experience." *Singh*, 390 F.3d at 182 (cleaned up).

At least some of "facts presented," *Singh*, 390 F.3d at 182, in a search warrant affidavit be must "particularized with respect to" the defendant in order to satisfy the nexus inquiry. *See Maryland v. Pringle*, 540 U.S. 366, 371 (2003); *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979) ("[A] search or seizure of a person must be supported by probable cause particularized with respect to that person.") (emphasis added); *Falso*, 544 F.3d at 124 (requiring the government to gather "evidence particularized to the target of the search" before the warrant application is made) (emphasis added); *cf. United States v. Coreas*, 419 F.3d 151, 156 (2d Cir. 2005) (warning that the "exercise of trying to stretch the remaining unparticularized allegations to uphold the search seems counterproductive" to a probable cause review). This is no less true in the cellphone search context. *See, e.g., Lauria*, 70 F.4th at 129 (reviewing the "'facts' relating specifically to [defendant] or to his [ ] cell phone" in the probable cause context).

The Second Circuit considers a law enforcement agent's professional experience—either with the subject themselves or type of criminal conduct at issue—to be an "important factor" to be considered by the magistrate judge. *United States v. Babilonia*, 854 F.3d 163, 178 (2d Cir. 2017) ("[W]e have recognized that a law enforcement officer's experience and training may permit the officer to discern probable cause from facts and circumstances where a layman might not.") (internal quotations omitted); *United States v. Fama*, 758 F.2d 834, 838 (2d Cir. 1985) (noting that a "number of cases have ruled that an agent's expert opinion is an important factor to be considered by the judge reviewing a warrant application" as to good faith).

Moreover, magistrate judges must also consider any reasonable inferences that can be drawn from an agent's professional opinion, as well as the actual, particularized facts sworn in

the search affidavit regarding the place or item to be searched.  Otherwise, "[p]ermitting a search warrant based solely on the self-avowed expertise of a law-enforcement agent, without any other factual nexus to the subject property, would be an open invitation to vague warrants authorizing virtually automatic searches of any property used by a criminal suspect." *United States v. Ukhuebor*, No. 20-MJ-1155, 2021 WL 1062535, at *3 (E.D.N.Y. Mar. 19, 2021), at *3 (quoting *United States v. Guzman*, No. 97-CR-786, 1998 WL 61850, at *4 (S.D.N.Y. Feb. 13, 1998)) (quotation marks omitted).

However, there must still be sufficient factual matter particularized to the defendant that "nudge[s]" the officer's professional or experience-based opinion from a "hunch" or "mere suspicion" to "fair probability that contraband or evidence of a crime will be found[.]"  *Lauria*, 70 F.4th at 128; *Walczyk v. Rio*, 496 F.3d 139, 156 (2d Cir. 2007); *United States v. Garlick*, No. 22-CR-540 (VEC), 2023 WL 2575664, at *6 (S.D.N.Y. Mar. 20, 2023).

### a. The Cell Site Warrant Is Not Deficient

Defendant argues that the agent affidavit supporting the Cell Site Warrant fails to establish probable cause that Defendant committed the subject offense because the agent affidavit ties Defendant to the Shooting through an October 8, 2022 Instagram photo in which Defendant wore similar pants to those worn by Individual-1.[3]  Defendant argues that such evidence is stale and that the pants are made by a popular streetwear brand that sells the pants in the United States and abroad.  With respect to probable cause that Defendant carried a cellphone at the time of the Shooting, Defendant argues that the agent affidavit relies mostly on the agent's

---

[3] Defendant also cites the facial recognition match in the November 21 cell site warrant, but because this information was not used to support the operative Cell Site Warrant, the Court declines to consider this argument in this opinion.

experiences—which he argues amount to mere conclusory generalizations—which cannot support a finding of probable cause.

Defendant relies primarily on a case in this district, *United States v. Bertini*, in which Judge Gardephe granted a defendant's motion to suppress in part upon a finding that the supporting agent affidavit did not show sufficient nexus between cell site data for the defendant's cellphone and the subject offense. *United States v. Bertini*, No. 23-CR-61, 2023 WL 8258334, at *14 (S.D.N.Y. Nov. 29, 2023). In that case—which involved a defendant who allegedly attempted to burglarize two banks—Judge Gardephe considered whether the agent affidavit used to support a cell site warrant satisfied both prongs of the probable cause analysis.

For the first prong—whether there was probable cause that Bertini had committed or attempted to commit a bank burglary—Judge Gardephe found that "nothing in the affidavit mention[ed] anything distinctive about Bertini's 'build,' whether height, weight, or other characteristic." *Id.* at *5. Even considering this in conjunction with the other facts in the agent affidavit—namely that Bertini had been convicted for prior bank burglaries and that distinctive items in his apartment tied Bertini to the burglary—Judge Gardephe held that the agent "[did] not establish that there was probable cause to believe that Bertini had committed either [burglary]." *Id.* at *6–7.

For the second prong—whether the agent affidavit showed there was probable cause to believe that Bertini used or carried his phone in either burglary—Judge Gardephe held that:

> To justify a search of cell site data concerning Bertini's cell phone, however, there must be probable cause to believe that Bertini (1) was carrying his cell phone at the time he committed one of the bank burglaries at issue, such that his phone's location would yield evidence of the burglaries; or (2) that he somehow used his cellphone at an earlier time in connection with or to facilitate the bank burglaries.

10

*Id.* at *7. Applying this test, Judge Gardephe found that the agent affidavit rested primarily on the agent's "hunch . . . that most people carry their cell phones most of the time, including when they commit crimes" and it alleged no facts that Bertini used his cellphone in connection with the alleged offenses, carried a cellphone, or even had reason to use or carry his cellphone in connection with the alleged offenses. *Id.* at *9; *see e.g., United States v. Harvey*, No. 21-CR-335, 2022 WL 684050, at *4 (E.D.N.Y. Mar. 8, 2022) (finding probable cause for a cellphone warrant where surveillance footage showed the defendant "using a phone moments after" the offense); *United States v. Baines*, No. 20-CR-00261, 2022 WL 35807, at *2 (D. Conn. Jan. 4, 2022) (finding probable cause where burglary suspects had used their cell phones to "communicate with each other during burglaries" and "to document their exploits during and after burglaries"); *United States v. Robinson*, No. 16-CR-545, 2018 WL 5928120, at *16 (E.D.N.Y. Nov. 13, 2018) (finding probable cause where agents had recovered the cell phone at issue "at the scene of the crime"). Consequently, Judge Gardephe concluded that such "blanket generalizations" are "not sufficient" to determine that probable cause exists. *Id.* at *10.

But the facts in this case are distinguishable from *Bertini*. With respect to the probable cause as to Defendant's identity, the Court concludes that the agent affidavit in this case provided more than the affidavit in *Bertini*. Here, the distinctive pants in the footage of the Shooting bear a strong resemblance to the pants worn by Defendant in an October 8, 2022 picture posted to his Instagram account. *See* Gov't Opp., Ex. A at 10, 12. Defendant argues the pants are commercially available and that it would not be uncommon to see these pants worn by other men in New York City. However, the Court disagrees. Pants with white lettering along the inside of the pant legs are not quotidian like a pair of blue jeans. Indeed, the Government

11

argued that the maker of the pants is not prolific enough "to suggest that the pants would be ubiquitous." Feb 6. Oral Argument Tr. 14:19–22.

Defendant argues that, in any event, such evidence is stale because of the temporal gaps—nearly a year between the Instagram post and the Shooting and over a year between the Instagram post and the warrant application—in this case. Defendant points to another case that reversed a probable cause finding in a warrant that relied on temporary internet files, but the nature of the evidence in this case is not so ephemeral. *See United States v. Raymonda*, 780 F.3d 105, 114 (2d Cir. 2015) (concluding that "a warrant lacks probable cause where the evidence supporting it is not 'sufficiently close in time to the issuance of the warrant'[such] that 'probable cause can be said to exist as of the time of the search' but that staleness "must instead be evaluated 'on the basis of the facts of each case[]'"). Here, it is fairly reasonable to infer that Defendant would wear such a distinctive pair of pants over a year after he was pictured wearing them. As such, the Court concludes that a magistrate judge could consider the photos submitted in the agent affidavit and find probable cause that Defendant committed the subject offense.

Turning to whether there was probable cause that Defendant carried or used a cellphone at the time of the Shooting, Defendant analogizes to *Bertini* by highlighting the agent affidavit's "mere" reliance on the agent's "general training and experience that 'individuals carrying out shootings like the Subject Offense described herein often carry their cell phones during the commission of their crimes, and use the cell phones to locate, purchase, and/or sell illegal firearms." Def. Mot. at 15. In turn, the Government argues that *Bertini* was wrongly decided, contending that although "it may often be the case that the place or cellphone to be searched has been used in connection with criminal activity, it need not have been for a search warrant to issue." Gov't Opp. at 16 (citing *United States v. Riley*, 906 F.2d 841, 845 (2d Cir. 1990)

12

(affirming the district court's probable cause determination where agents searched a storage locker without establishing that the defendant had used the locker and concluding that "[a]rmed with these facts and knowing from experience that dealers use such lockers to store drugs pending distribution, the agents would have been remiss in their duties had they not sought to search the storage locker")).

In *Bertini*, Judge Gardephe found unpersuasive the argument that "a warrant for cell site data can be premised solely on an agent's observation that most people carry cell phones most of the time." *Bertini*, 2023 WL 8258334, at *12. Indeed, Defendant highlights the absence of any factual claims in the agent affidavit that Defendant used or carried a cellphone in the Shooting. *See* Feb 6. Oral Argument Tr. 6:26–7:8. ("Let's talk about the second point, which is whether there is probable cause to believe that the suspect used a phone to help facilitate this offense. Again, the warrant affidavit does not make any factual claims to that. Instead, the warrant affidavit makes a blanket claim that based on the officer's training and experience, he knows that individuals use cell phones to locate, purchase, and/or sell illegal firearms and ammunition. Again, that's not a case-specific fact.).

However, the agent affidavit in this case does not merely rely on the notion that cellphones are ubiquitous in the modern day. The agent affidavit states that Defendant used a cellphone in the days before and after the shooting and that Defendant used his Instagram to "post pictures of his whereabouts[,]" one of which shows Defendant wearing the "pants worn by Individual-1". *See* Gov't Opp., Ex. A at 12–13. It is not disputed that Defendant uses an Instagram account, so it could also be reasonably inferred that Defendant uses a cellphone to post pictures to his Instagram account. In order to use the phone to post pictures of himself wearing distinctive pants, he must possess the phone at that time. It can therefore be inferred, that at a

13

future time, while wearing the distinctive pants, during the Shooting, he also possessed the phone. The Court concludes that the magistrate judge reasonably determined that this evidence supports a showing of probable cause.[4]

### b. The Cellphone Warrant Is Not Deficient

In seeking to discharge the Cellphone Warrant, Defendant argues that the agent affidavit used in support of the pertinent application neither established probable cause that Defendant committed the subject offense nor that there is sufficient nexus between the contents of Defendant's cellphone and the subject offense. With respect to the identity probable cause, the Court concludes that the agent affidavit not only adequately supported a showing of probable cause, but it also incorporated the same agent's analysis from the Cell Site Warrant. *See* Gov't Opp., Ex. B at 2–21, 28–32. The Court finds that the probable cause as to identity has been established.

With respect to the nexus between the contents of Defendant's cellphone and the subject offense, Defendant argues that the agent affidavit relies "exclusively . . . on [the agent's] generalized training and experience." Def. Mot. at 7. Defendant contends that—in addition to the agent's training and experience—something more is needed within the four corners of the affidavit, citing cases finding additional particular facts to be sufficient for a finding of probable cause. *Id.* at 18.

On this point, the Government argues that the agent affidavit provides enough nexus because "[i]t is axiomatic that someone who shoots another person at point-blank range needs to first find and acquire a gun" and, "to the extent the shooter owns and uses a cellphone during the time period around the offense—as all four affidavits demonstrate that the defendant did—the

---

[4] Defendant argues that the subsequent warrants should not have relied on a deficient Cell Site Warrant. Def. Mot. at 16. Having found that the Cell Site Warrant is not deficient, the Court considers this argument to be moot.

cellphone will often include evidence of records 'relating to the Subject Offense,' including communications with their co-conspirators, evidence of their 'purchase, acquisition, or maintenance of firearms,' and 'photographs or videos of firearms, firearms-related paraphernalia, or ammunition used in connection with the Subject Offense.'" Gov't Opp. at 19 (citing Gov't Opp., Ex. B at 9). Moreover, the cell location data stemming from the Cell Site Warrant placed Defendant's cellphone 0.7 miles from the scene of the Shooting. *Id.* at 18. As such, Defendant's phone "was not located in the vicinity of [his] residence in Brooklyn but instead located miles away in the vicinity of the shooting at 4:49 a.m., a time when most individuals are asleep at home." *Id.*

The Court agrees with the Government. The cases cited by Defendant certainly show that when cellphones are inextricably linked to the offense, a probable cause determination may follow.[5] However, these cases show what may establish probable cause, but they do not establish a floor—they don't state what is merely sufficient. Rather, the determinative question for a magistrate judge is "whether, given all the circumstances set forth in the affidavit before [them], there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238. Here, in addition to the statements regarding the

---

[5] *See United States v. Gatto*, 313 F. Supp. 3d 551, 558–59 (S.D.N.Y. 2018) ("The Court concludes, in the case of each of the warrants at issue, that the magistrate judge was entitled to infer from the fact that the defendant used a cell phone to make calls and send text messages related to the alleged scheme that other communications and evidence pertaining to that scheme also would have been made on that cell phone."); *United States v. King*, No. 21-CR-255, 2022 WL 875383, at *4 (S.D.N.Y. Mar. 24, 2022 (holding that "security camera footage show[ing] [d]efendant holding the Phone minutes before the shooting[,]" coupled with an agent's training and experience, "is sufficient to create probable cause to search the Phone"); *United States v. Harvey*, No. 21-CR-335, 2022 WL 684050, at *8 (E.D.N.Y. Mar. 8, 2022) ("The Court finds that the magistrate had a substantial basis for concluding that probable cause existed for the Phone Warrant. Specifically, the fact that Harvey was recorded using a cellphone moments after the March 15, 2021, attempted robbery and shooting establishes the evidentiary nexus between his cellphone and criminal activity."); *United States v. Robinson*, No. 16-CR-545, 2018 WL 5928120, at *16 (E.D.N.Y. Nov. 13, 2018) ("[T]he Court finds that sufficient probable cause existed to search these items. According to the Liscinsky Affidavit, SCPD found the Roof Cellphone at the scene of the home invasion after the Defendant dropped it while fleeing. The SCPD identified the Roof Cellphone as the Defendant's based on the presence of one or more of his pictures on the phone, including the home screen.") (internal citations omitted).

agent's training and experience, the totality of the circumstances laid out in the agent affidavit establish a "fair probability" that evidence of the Shooting would be found in Defendant's phone.

### c. The iCloud Warrants Are Not Deficient[6]

Turning to the iCloud Warrants, the Court reapplies the identity probable cause analysis from the previous section and also finds that identity probable cause was also established in the agent affidavits. *See* Gov't Opp., Ex. C at 11–12, 15; *See* Gov't Opp., Ex. D at 11–13, 1617, 23, 25 28–32.

Defendant's argument here—that there is insufficient nexus between Defendant's iCloud account and the subject offense—fails for reasons similar to those deployed in his challenge to the Cellphone Warrant. Defendant argues that warrants for cloud accounts typically require the kind of nexus "found in cases involving conspiracy or crimes that inherently require communication about the offenses, such as insider trading or fraud." Def. Mot. at 21 (collecting cases). Moreover, Defendant contends that the facts at hand are similar to those in *United States v. Disla Ramos*, where the court found that "[t]he Premises Affidavit provided no reason to believe that evidence of the crime would be found on electronic devices other than the cellphone in Disla Ramos's apartment. It draws no link between Disla Ramos's cellphone, which was clearly implicated in the criminal activity, and other electronic storage media that Disla Ramos may own." *United States v. Disla Ramos*, No. 22-CR-431, 2022 WL 17830637, at *17 (S.D.N.Y. Dec. 21, 2022).

However, the Government points to other evidence in the agent affidavit attesting to Defendant's "participat[ion] in the Shooting with others with whom he may have been in communication over social media" amounting to "case-specific, factual details to support

---

[6] Defendant cited only the March iCloud Warrant in his memorandum, but the Court applies his arguments to both the March iCloud Warrant and the October iCloud Warrant.

16

probable cause." Gov't Op. at 21. The Court concludes that such a factual basis nudges the officer's professional or experience-based opinion from a hunch. Here again, statements regarding the agent's training and experience in addition to the totality of the circumstances laid out in the agent affidavit establish a "fair probability" that evidence of the Shooting will be found in Defendant's iCloud account.

### d. The Good Faith Exception Applies

Notwithstanding the Court's analysis above, the good faith exception to the exclusionary rule would still apply. The good faith exception to the exclusionary rule does not apply "(1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable." *United States v. Moore*, 968 F.2d 216, 222 (2d Cir.1992) (citing *United States v. Leon* 468 U.S. 897, 922 (1984)). In the absence of any allegations of misconduct and, largely for the reasons stated above, the Court concludes that the warrant applications at issue in this case—even if they could have been said to be lacking with respect to probable cause—do not lack indicia of probable cause such that the warrants offend the good faith exception.

## II. Motion to Dismiss the Indictment

Defendant also seeks to dismiss the indictment on the ground that 18 U.S.C. § 922(g)(1) is unconstitutional, both facially and as applied to Defendant. The Court finds that both arguments fail.

The Supreme Court has categorically validated the felon disarmament laws in *McDonald v. City of Chicago, Ill.*, 561 U.S. 742 (2010), and *D.C. v. Heller*, 554 U.S. 570 (2008). In so

doing, the Supreme Court made clear that its Second Amendment decisions should not "be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons[.]" *Heller*, 554 U.S. at 626.

The majority opinion in *Bruen* does not expressly address the issue of felon disarmament. *See generally Bruen*, 597 U.S. 1. In fact, the *Bruen* majority opinion is clear that *McDonald* and *Heller* are controlling precedents. *Id.* at 31. Moreover, the *Bruen* majority repeatedly notes that the petitioners are "law-abiding" citizens. *See, e.g. id.* at 3, 5, 6, 7, 8, 9, 10, 15, 26, 29, 30. Further, Justice Alito states in his concurrence that *Bruen* does not "disturb[] anything that [the Supreme Court] said in *Heller* or *McDonald* . . . about restrictions that may be imposed on the possession or carrying of guns." *Id.* at 72. Finally, Justice Kavanaugh, joined by Chief Justice Roberts, reiterates in his concurrence that "the Second Amendment allows a 'variety' of gun regulations" as prescribed by *Heller*. *Id.* at 80.

18 U.S.C. § 922(g)(1) is among those regulations that have been found constitutional by the Second Circuit in *United States v. Bogle*, 522 F. App'x 15, 17 (2d Cir. 2013). *See also United States v. Jimenez*, 895 F.3d 228, 233 (2d Cir. 2018) (citing *Bogle* as precedent "uphold[ing] the federal ban on ex-felons' access to firearms and ammunition"). Accordingly, 18 U.S.C. § 922(g)(1) is constitutional.

Defendant's as-applied challenge to the statute is also meritless. Defendant has a felony conviction "punishable by imprisonment for a term exceeding one year," 18 U.S.C.A. § 922 (West), and falls squarely within 18 U.S.C. § 922(g)(1). Thus, Section 922(g)(1) is not unlawful as applied to Defendant. Accordingly, Defendant's motion to dismiss the indictment is denied.

## CONCLUSION

For the reasons set forth above, Defendant's motions to suppress evidence and to dismiss the indictment are DENIED. The Clerk of Court is respectfully directed to terminate ECF Nos. 19 and 20.

**SO ORDERED.**

**Dated:** **March 6, 2025**
**New York, NY**

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**